## RAPIDES CLUB v. AMERICAN UNION INS. CO. OF NEW YORK.

District Court, W. D. Louisiana, Alexandria Division. July 15, 1929.

No. 354.

J. B. Nachman and Lamar Polk, both of Alexandria, La., for plaintiff.

Hawthorn & Stafford, of Alexandria, La., for defendant.

DAWKINS, J. The issues of this case are stated to some extent in the memorandum opinion heretofore handed down upon the motion of the defendant to dismiss with the alternative prayer to have the petition reformed to conform to the equity practice and of the plaintiff to transfer to the equity docket, which will be printed ahead of this opinion. See (D. C.) 33 F.(2d) 552. The motion to dismiss and reform having been overruled and the case transferred to the equity side of the court, the same has been tried and is now for decision upon the issue solely of reformation. The facts as I find them, largely undisputed, are that one Meredith solicited the insurance from plaintiff and was informed of the existence of a chattel mortgage held by a third person, the Mutual Loan & Investment Company; that Meredith was employed by Tuttle & Tuttle, Inc., a corporation which had been designated by the defendant as its regular agent for the writing of fire insurance in the city of Alexandria, La.; Meredith's employment was not as a member of the regular office force of Tuttle & Tuttle, Inc., but he was permitted to solicit insurance for their account as agents of a number of companies, and was given 10 per cent. of the gross premiums received, or one-half of the portion coming to the agency; and at times he was paid a salary. He had been so engaged for about four years. This

particular business was reported to his employer, and the policy which was written made no mention of the chattel mortgage. It contained a provision that if the subject of the insurance was personal property and it be or become incumbered with a chattel mortgage, the policy should be void. Meredith was not called, either by defendant or the plaintiff, to dispute the statements of Begnaud and Hayden, who were partners or joint owners of the property destroyed, operated under the name of the Rapides Club, but two officers of Tuttle & Tuttle, Inc., testified that they had no knowledge of the chattel mortgage. They further said that the policy, which the one in suit was written to replace, was handed to their office by Mr. Meredith, who said nothing about the mortgage; that blanks were filled in from the information contained in the old policy as to names, description of property, etc., except that the amount was reduced from $6,000 to $5,000. This was several days before the old policy expired, and it was later delivered to plaintiffs by Meredith, who placed it in their safe, where it remained until after the fire. They each testified that it was not read by them and they did not know that the chattel mortgage had not been mentioned and that it contained the clause avoiding it until after the fire.

Defendant denied liability because of the alleged breach of warranty with respect to the chattel mortgage, and relies upon the further provision in the policy that none of its terms could be waived and that none of its agents could bind the insurer in respect to matters therein except by written rider or paster attached to and forming a part thereof.

 I think the evidence unquestionably shows that plaintiff informed Meredith of the existence of the mortgage, and the crucial question upon the issue of reformation is as to whether the circumstances above outlined charged the defendant with notice of the information possessed by Meredith so as to entitle plaintiff to have the policy reformed and to estop defendant from denying liability because of the existence of the chattel mortgage.

The questions of law involved herein and the authorities were so well covered by Judge Morrow of the Court of Appeals for the Ninth Circuit, in the case of McElroy v. British America Assurance Co. of Toronto, Canada, 94 F. 990, and the issues were so similar that I deem it unnecessary to indulge in an extended discussion, but am content to adopt the reasoning therein used. See, also, Abraham v. North German Ins. Co. (C. C.) 40 F. 717; 2 Cooley's Briefs on Insurance (2d Ed.) pp. 1414, et seq., verbo "Reformation and Modification of Contracts"; 26 C. J. verbo "Fire Insurance," §§ 368, 372, and 378; 14 R. C. L. p. 1159, § 341.

It could hardly be assumed that the plaintiffs in this case would have paid their money for insurance under circumstances in which they could not at any time have recovered if the position of defendant in this case were maintained. In other words, if the policy is to be literally applied, there never was any validity to the policy or any protection afforded these petitioners and there can be no question but what they believed they were protected. I think also it was both their intention and that of Meredith, whose authority I do not believe defendant can be heard to deny, that the policy should be so written as to take notice of the existence of this chattel mortgage.

My conclusion is that defendant is estopped to deny the authority of Meredith to act for it in soliciting the insurance, and that his knowledge should be imputed to it, as a result of which it is now precluded from seeking avoidance of the policy because of the mortgage in question. Accordingly plaintiff should have judgment reforming its policy so as to include notice or acknowledgment of the chattel mortgage in favor of the Guaranty Investment Company at the time it was written. Decree in accordance with these views may be presented.